FILED
2014 Mar-17  AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **FELICIA BEAVERS, o/b/o** | ) | |
| **JASMINE WORTHY,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 4:13-cv-1120-CLS** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Felicia Beavers commenced this action on June 12, 2013, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge, and denying the claim she asserted on behalf of her daughter, Jasmine Worthy ("claimant"), for child supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen,*

847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant was fourteen years old at the time of the administrative decision, and she alleged childhood disability due to seizures.[1]   The ALJ found that claimant suffered from the severe impairments of non-epileptic seizures, epileptic seizures, and anxiety disorder, but he nonetheless concluded that claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments.[2]   Claimant contends that this decision was neither supported by substantial evidence nor in accordance with applicable legal standards.   Specifically, claimant argues that the ALJ:  (1) failed to properly advise her and her mother of the right to counsel; (2) failed to remand for consideration of new evidence; and (3) failed to state adequate reasons for finding the testimony of claimant and her parents not fully credible.   Upon review of the record, the court concludes these contentions are not correct.

## A.    Right to Counsel

The Social Security Act provides grants each claimant the statutory right to counsel, as follows:

The Commissioner of Social Security shall notify each claimant

---

[1] Tr. 16, 32.

[2] Tr. 16.

2

in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security.   Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.

42 U.S.C. § 406(c).  Even so, a claimant "may waive his right to counsel in Social Security hearings."  *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982) (citing *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981)).

[S]uch a waiver must establish, at some point, that the claimant is "properly apprised of his options concerning representation" to be effective. *Peppers v. Schweiker*, 654 F.2d 369, 371 (5th Cir. 1981).  A claimant cannot knowingly and intelligently waive his statutory right to counsel when he is not adequately informed of it either in a prehearing notice or at his hearing.

*Smith*, 677 F.2d at 828 (alteration supplied).  To be adequate, notice of the option to waive the right to counsel must "inform the claimant fully as to the possibility of free counsel and limitations on attorney fees to 25% of any eventual award."  *Id.* at 829 (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir. 1981)).  In addition, before failure to adequately inform a claimant of the consequences of waiving his right to counsel can serve as grounds to overturn an ALJ's opinion, there must be a finding of prejudice.  *Id.*

In the present case, in response to claimant's request for an administrative hearing, the Social Security Administration sent claimant a letter dated November 17,

2010, that informed her:

> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing.  If you decide to have a representative, you should find one immediately so that he or she can start preparing your case.
>
> Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge.  Your representative may not charge or receive any fee unless we approve it. We are enclosing a list of groups that can help you find a representative.[3]

Attached to that letter was a two-page publication entitled "Your Right to Representation."  The publication reiterated that a representative appointed to provide assistance during an administrative hearing could not charge any fee that was not approved by the government, and emphasized that the government usually would not approve a fee that was more than 25 percent of past-due benefits recovered, or $6,000, whichever is less.  It also stated that a representative who represents a claimant in federal court typically will not receive a fee in excess of 25 percent of past-due benefits recovered.[4]  Another attachment to the letter provided the addresses and telephone numbers of organizations that can assist a claimant in finding counsel.[5]

Claimant does not dispute receiving the November 17 letter, but she nonetheless

---

[3] Tr. 59.

[4] Tr. 61-62.

[5] Tr. 63.

appeared at the administrative hearing without an attorney or other representative.

The ALJ questioned claimant's mother about the decision not to hire an attorney:

> ALJ:  I want to talk to you a little bit before we get started.  I understand you don't have an attorney.  Have you thought about getting [an] attorney?
>
> WTN:  No, sir.
>
> ALJ:  Okay.  Well, the law says you do have a right to have an attorney or other person to represent you in these matters.
>
> It doesn't really matter to us; whatever you're comfortable with and whatever you would like to do, we can do it.  If you feel like you would like to get an attorney, we can postpone the matter for 60 days and let you consult with an attorney, and we can regroup and have the hearing later on.  Or if you feel like you don't want to get an attorney, we can go forward here today, and I would ask you questions and ask Jasmine questions and her father questions about what the problems are.  And then it would probably take me 30 to 60 days, or maybe longer, to get a decision out.
>
> But attorneys cannot charge you money up front.  They have to get approval from me.  And they only can get money from me if I approve the case.  So as far as paying attorneys, they don't get paid anything unless they win.  And if they win, I have to approve their fee agreement.  So that's the situation on attorneys' fees if you do not know that.
>
> So I guess what my question would be:  Have you thought about whether you'd like to go forward today without an attorney, or would you like [to] take time to at least consult an attorney?
>
> WTN:  To go forward.
>
> ALJ:  Okay.  All right.[6]

---

[6] Tr. 30-31 (alterations supplied).

5

Claimant asserts that the ALJ "failed to explain the possibility of free counsel and that attorney fees are limited to twenty-five percent of any eventual award."[7]  The record does not support assertion.  To the contrary, the claimant was thoroughly informed, both in the November 17 letter and by the ALJ during the hearing, of her right to counsel and the rules governing attorneys' compensation.  Moreover, even if claimant had not received adequate notice of her right to counsel, she did not suffer prejudice.  Claimant asserts that an attorney would have known more about "the standards for disability due to seizures or the need to submit affidavits of teachers,"[8] but when claimant finally did hire an attorney after receiving the ALJ's unfavorable decision, that attorney submitted additional evidence on her behalf to the Appeals Council.  Whether the Appeals Council properly considered that evidence is the subject of the following section, but in any event, it cannot be said that claimant was deprived of the *opportunity* to present adequate evidence to support her claim as a result of her lack of representation during the administrative hearing.

## B.  New Evidence

Claimant next asserts that the Commissioner failed to remand for consideration of new evidence submitted for the first time to the Appeals Council.

When a claimant submits new evidence to the AC [*i.e.,* Appeals

---

[7] Doc. no. 9 (claimant's brief), at 7.

[8] *Id.*

Council], the district court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous. *Ingram*[*v. Commissioner of Social Security Administration*], 496 F.3d [1253,] 1262 [(11th Cir. 2007)]. Remand is appropriate when a district court fails to consider the record as a whole, including evidence submitted for the first time to the AC, in determining whether the Commissioner's final decision is supported by substantial evidence. *Id.* at 1266-67. The new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

*Smith v. Astrue,* 272 F. App'x 789, 802 (11th Cir. 2008) (alterations supplied).

The new evidence claimant submitted to the Appeals Council consisted of a letter brief from claimant's new attorney,[9] a teacher questionnaire from Michael O'Brien at Gadsden Middle School,[10] and new medical records from several different sources.[11] The Appeals Council acknowledged receiving that evidence and making it a part of the record.[12] Even so, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision."[13] The Order from the Appeals Council specifically stated that the Appeals Council considered all of the reasons why claimant disagreed with the ALJ's decision, and all of the additional evidence submitted, but it nonetheless concluded that the information before it did not

---

[9] Tr. 137-178.

[10] Tr. 180-86.

[11] Tr. 499-559.

[12] Tr. 4-5.

[13] Tr. 1.

"provide a basis for changing the Administrative Law Judge's decision."[14]

As an initial matter, the Appeals Council adequately explained its reasons for failing to consider the new evidence.  *See Levie v. Commissioner of Social Security,* 514 F. App'x 829, 832-33 (11th Cir. 2013) ("The AC specifically stated it 'considered the reasons [Levie] disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals Counsel.'  Contrary to Levie's assertion, nothing requires the AC to further explain its denial of review, and in any event we must consider the evidence anew to determine whether the new evidence renders the denial of benefits erroneous.") (citing *Ingram*, 496 F.3d at 1262) (alteration supplied).

Moreover, the new evidence does not provide a basis for overturning the ALJ's decision.  Claimant contends that Mr. O'Brien's teacher questionnaire "showed serious problems in two areas and an obvious problem in 10 areas."[15]  That is technically true, but it must be noted that the "areas" referenced by claimant are not equivalent to the domains of functioning that are relevant for considering whether a child claimant functionally equals a listed impairment.  In fact, each domain of functioning covered on the teacher questionnaire included anywhere from seven to fourteen subparts for which the teacher was directed to provide a rating.  Those

---

[14] Tr. 2.

[15] Doc. no. 9 (claimant's brief), at 3.

subparts are what claimant is referring to as "areas."[16]  Thus, while Mr. O'Brien did observe that claimant had a "serious problem" in two subparts of the domain of acquiring and using information (*i.e.,* understanding and participating in class discussion, and providing organized oral explanations and adequate descriptions), his overall assessment reflected that claimant's ability to acquire and use information was only moderately impaired.[17]  The questionnaire as a whole is consistent with the ALJ's finding that claimant experienced less than marked limitation in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself; no limitation in moving about and manipulating objects; and marked limitation in health and physical well-being.[18]

Claimant makes no attempt to explain why the new medical records submitted to the Appeals Council had a reasonable possibility of altering the administrative decision, other than to point out that claimant received ambulance rides to the emergency room on six occasions between July of 2009 and May of 2011, and that she received "continued treatment of seizures."[19]  Indeed, the new records reflect that claimant continued to receive treatment for seizures, including sometimes being

---

[16] *See* Tr. 180-86.

[17] *See* Tr. 180.

[18] Tr. 19-23.  To functionally equal a listing, the claimant's impairments "must be of listing-level severity; *i.e.,* [they] must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain . . . ."  20 C.F.R. § 416.926a(a) (alterations supplied).

[19] Doc. no. 9 (claimant's brief), at 3.

transported to the hospital if she had a seizure while she was not at home. But the ALJ already considered claimant's history of seizures and her trips to the emergency room, and the new records do not reflect that claimant's condition worsened after she appeared before the ALJ. To the contrary, as the ALJ found, the records indicate that claimant's condition started to improve after she was started on a new medication.

In summary, the record as a whole, including the evidence submitted for the first time to the Appeals Council, does not indicate that claimant met, medically equaled, or functionally equaled one of the listed impairments. The Appeals Council did not err in failing to remand for consideration of new evidence.

## C.  Credibility

Claimant's final argument is that the ALJ failed to state adequate reasons for finding the testimony of claimant and her parents to be fully credible.

To demonstrate that pain or another subjective symptom renders her disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony on pain, "he

must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). Furthermore, "*[a]fter* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis and alteration supplied).

Here, the ALJ stated:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below. Notably, the record demonstrates that the right medication and proper dosage have brought about significant improvement in reducing her symptoms.[20]

The ALJ then went on to explain his decision with regard to each domain of functioning. He considered claimant's school performance, the results of neuropsychological testing, the prior statements of claimant's family members, claimant's activities, and the other medical and psychological evidence of record. Claimant's improvement after her change in medication figured heavily in the ALJ's

---

[20] Tr. 17-18.

conclusions.[21]

The court finds that the ALJ adequately articulated his reasons for not fully crediting the testimony of claimant and her parents, and the ALJ's conclusions were supported by substantial evidence. Claimant's conclusory arguments to the contrary are unavailing.[22]

## D.     Conclusion and Order

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 14th day of March, 2014.

_____
United States District Judge

---

[21] Tr. 18-23.

[22] Claimant never explained exactly *why* she thought the ALJ's evaluation of her credibility was inadequate. Instead, she merely made the conclusory assertion that the ALJ's evaluation *was* inadequate. *See* doc. no. 9 (claimant's brief), at 11 ("The ALJ **rejected the family testimony without a sufficient basis** and without a sufficient explanation.") (emphasis in original); *id.* at 13 ("The 'reasons' set out in the body of the decision by the ALJ are not adequate reasons for finding Claimant and her family not credible.").